# UNITED STATES DISTRICT COURT

# DISTRICT OF MAINE

KAYLA DOHERTY,                              )
                                           )
                        PLAINTIFF          )
                                           )
v.                                         )
                                           )
MERCK & CO., INC. and                      )
UNITED STATES OF AMERICA,                  )
                                           )        CIVIL NO. 1:15-cv-129-DBH
                        DEFENDANTS         )
                                           )
AND                                        )
                                           )
ATTORNEY GENERAL FOR THE                   )
STATE OF MAINE,                            )
                                           )
                 INTERVENOR DEFENDANT      )

## DECISION AND ORDER ON MOTIONS TO DISMISS

In this lawsuit involving Maine's Wrongful Birth Statute, the next step is to determine the statute's constitutionality. Kayla Doherty blames her doctor and a drug manufacturing company for a failed contraceptive implant that led to her unplanned pregnancy and delivery of a healthy child. She sued the United States on the basis that it is responsible for her doctor's negligence; and Merck & Co, Inc. for what she claims was a defective implant device. The defendants moved to dismiss her lawsuit on the basis of Maine's Wrongful Birth Statute. I certified questions about the statute's interpretation to the Maine Law Court, see Certification of Questions (ECF No. 63), and received that Court's response.

<u>Doherty v. Merck & Co., Inc.</u>, 154 A.3d 1202 (Me. 2017).  The Attorney General

for the State of Maine has intervened to defend the statute's constitutionality.[1]

On the motions to dismiss, I take the facts as alleged; they are stated in

both my certification and the Law Court's decision.  Basically, the plaintiff

Doherty asserts that a doctor for whose actions the United States was

responsible negligently failed to insert a Merck implant device that was designed

to prevent pregnancy for at least three years; that Merck had negligently

designed the device such that implantation failed; and that the outcome was an

unplanned pregnancy, a long and painful delivery, and the birth of a healthy

baby; and damages consisting of medical expenses, lost wages, pain and

suffering, expenses of mental health counseling from rearing the child as a single

mother without adequate preparation, planning and economic resources, and

resulting delay in pursuing her professional goals.  First Am. Compl. (ECF No.

11) ¶¶ 27-78.

As a result of the Law Court's decision, it is now law of this case that

"pursuant to 24 M.R.S. § 2931 the plaintiff may not recover any damages on her

claims against either defendant [United States or Merck]."  <u>Doherty</u>, 154 A.3d at

1210.  The Law Court did not address the constitutionality of the statute because

I had not explicitly certified the question of state or federal constitutionality.[2]

---

[1] The Attorney General suggests "wrongful conception" would better characterize the type of claim here, in part for the sake of avoiding inconsistent usage.  Br. of Att'y General (ECF No. 69) at 2 n.2.  But the other parties—as well as the Attorney General's own brief in other sections— use the term "wrongful birth," which also appears in the statutory section title.  <u>See</u> Pl.'s Consolid. Opp'n (ECF No. 73) <u>passim</u>; 24 M.R.S.A. § 2931 ("Wrongful birth; wrongful life").  I follow the statute and the parties' typical usage.

[2] I thought the Law Court might address constitutional issues because its cases state that "[i]f a statute raises constitutional concerns, we will, whenever possible, construe the statute in a manner to avoid a declaration of unconstitutionality," <u>DiVeto v. Kjellgren</u>, 861 A.2d 618, 623 (Me. 2004), and I pointed out in the certification that "[t]he plaintiff contends that the 'open courts'

This opinion, therefore, addresses Dohertys arguments that the statute, as the Law Court has interpreted it, is unconstitutional under both state and federal constitutions. I address each of the constitutional issues Doherty has raised. I conclude that the Wrongful Birth Statute is not unconstitutional and grant the motions to dismiss.

**1.** *Access to Courts*

    a.   <u>Maine's Open Courts Provision</u>

Article 1, Section 19 of the Maine Constitution provides:

> Every person, for an injury inflicted on the person or the person's reputation, property or immunities, shall have remedy by due course of law; and right and justice shall be administered freely and without sale, completely and without denial, promptly and without delay.

Doherty contends that Maine's Wrongful Birth Statute unconstitutionally deprives her of a remedy for the injury that the failed implant caused.

Maine's Law Court has consistently held that Maine's Open Courts provision means "that 'the courts must be accessible to all persons alike without discrimination, at times and places designated for their sitting, and afford a speedy remedy *for every wrong recognized by law as remediable in a court.*'" <u>Godbout v. WLB Holding, Inc.</u>, 997 A.2d 92, 94 (Me. 2010) (emphasis added) (upholding statute of repose) (quoting <u>State v. Bilynsky</u>, 942 A.2d 1234, 1236 (Me. 2008) (upholding limitation period for withdrawing a plea in a criminal case), (quoting <u>Me. Med. Ctr. v. Cote</u>, 577 A.2d 1173, 1176 (Me. 1990) (upholding statute of limitations for a minor))); <u>accord</u> <u>Peters v. Saft</u>, 597 A.2d 50, 54 (Me.

provision of article 1, section 19 of the Maine Constitution bears upon the answers." Certification of Questions (ECF No. 63) at 2. In retrospect, I recognize that I should have certified the state constitutionality issues explicitly. The federal constitutional issues, on the other hand, were my responsibility to decide.

1991) (damages cap under Maine's Liquor Liability Act); <u>Choroszy v. Tso</u>, 647 A.2d 803, 807 (Me. 1994) (statute of limitations). In the wake of the Law Court's decision on my certification, Doherty does not have, in <u>Godbout's</u> language, a "wrong recognized by law as remediable in a court," 997 A.2d at 94, and therefore the Open Courts provision does not help Doherty.[3]

Alternatively, the Law Court has held that "[i]n view of [the Open Courts] provision, legislation should not be deemed to preclude an injured person from having a remedy of his own for a recognized wrong in the absence of a clear manifestation of intent to that effect." <u>Gibson v. Nat'l Ben Franklin Ins. Co.</u>, 387 A.2d 220, 223 (Me. 1978). The Law Court's certified answers to my questions show that the Maine Legislature demonstrated "a clear manifestation of intent" to foreclose a cause of action for a plaintiff in Doherty's circumstances. Again, therefore, the Open Courts provision does not help Doherty in her claim that the Maine statute is unconstitutional.

b.    United States Constitution

The First Amendment to the United States Constitution protects the people's right "to petition the Government for a redress of grievances." U.S. Const. amend. I. This provision has been applied to the states through the Fourteenth Amendment, <u>Edwards v. South Carolina</u>, 372 U.S. 229, 235-37 (1963), and the Supreme Court has regularly held that it extends to court access. <u>See, e.g.</u>, <u>BE & K Constr. Co. v. NLRB</u>, 536 U.S. 516, 525 (2002) ("[t]he right of access to the courts is . . . but one aspect of the right of petition"). The Supreme

---

[3] Even before Maine enacted its Wrongful Birth Statute, the Law Court's decision in <u>Macomber v. Dillman</u>, 505 A.2d 810 (Me. 1986), established that a person in Doherty's circumstances did not suffer a wrong recognized by law as remediable in a court.

Court has said that its precedents demonstrate an "unsettled . . . basis of the constitutional right of access to courts"[4] but, regardless of the basis of the right, "our cases rest on the recognition that the right is *ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court.*" Christopher v. Harbury, 536 U.S. 403, 415 (2002) (emphasis added). The Second Circuit has interpreted this Supreme Court language to mean that "[t]he right to petition exists in the presence of an underlying cause of action and is not violated by a statute that provides a complete defense to a cause of action or curtails a category of causes of action." City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 397 (2d Cir. 2008). Or as the First Circuit said even before Christopher v. Harbury: "In a nutshell, while there is a constitutional right to court access, there is no complementary constitutional right to receive or be eligible for a particular form of relief." Inmates of Suffolk Cty. Jail v. Rouse, 129 F.3d 649, 660 (1st Cir. 1997). I follow that reasoning. In other words, the federal analysis is the same as for the Open Courts provision of the Maine Constitution: there can be no constitutional claim regarding denial of court access unless the plaintiff has a viable underlying cause of action. Since the Maine Law Court has decided that Doherty has no underlying cause of action, her federal constitutional right of access to courts has not been violated.

---

[4] The Court has noted that in addition to the First Amendment right of petition, the right of access to courts is sometimes grounded in the Article IV privileges and immunities clause, the Fifth Amendment due process clause, and the Fourteenth Amendment equal protection and due process clauses. Christopher v. Harbury, 536 U.S. 403, 415 n.12 (2002).

**2.      *Constitutional Right to Jury Trial under the Maine and United States Constitutions***

Since the Law Court has determined that the Wrongful Birth Statute forecloses Doherty's right to recover, she can have no federal constitutional right to a jury trial on her claims. I follow the Sixth Circuit's unqualified statement:

> Nothing in the text or history indicates that the Seventh Amendment protects the existence of certain common-law causes of action. The Seventh Amendment protects a litigant's right to a jury trial *where there exists a cause of action* at common law, or one analogous thereto, for legal relief, where the amount in controversy exceeds twenty dollars.

Martin v. Telectronics Pacing Sys., Inc., 105 F.3d 1090, 1101 (6th Cir. 1997) (emphasis added). And where there is no cause of action, a plaintiff has "no 'suit[ ] at common law' and the Seventh Amendment's guarantees are not implicated." Id.; see also Boyd v. Bulala, 877 F.2d 1191, 1196 (4th Cir. 1989); accord Sullivan v. United States, 788 F.2d 813, 816 (1st Cir. 1986) (Seventh Amendment jury trial right exists only where there is a genuine issue of material fact to be determined); Kelly v. United States, 789 F.2d 94, 97-98 (1st Cir. 1986) (same).[5]

The result is the same for Doherty's claim under Maine's Constitution Article I, Section 20.[6] Like the First Circuit cases cited above, the Maine Law Court says that the right to jury trial is the right to have a jury decide questions of fact when the substantive law makes those questions of fact material. Peters

---

[5] Doherty has conceded that she has no right to jury trial in her Federal Tort Claims Act claim against the United States. Opp'n to Mots. to Dismiss (ECF No. 26) at 23, 26, nn.33, 34; 28 U.S.C. § 2402; Carlson v. Green, 446 U.S. 14, 22 (1980).
[6] "In all civil suits, and in all controversies concerning property, the parties shall have a right to a trial by jury, except in cases where it has heretofore been otherwise practiced . . . ." Me. Const. art. I, § 20.

v. Saft, 597 A.2d 50, 53 (Me. 1991). Since there is no cause of action for Doherty's injury as she has described it, there are no material questions of fact for a jury to decide.

As part of her argument that her right to jury trial has been violated, Doherty asserts that the Maine Legislature does not have unfettered discretion to abolish the common law. Pl.'s Consol. Opp'n (ECF No. 73) at 14-16. Assuming that there was a right at common law to recover for a wrongful birth,[7] I have found no Maine precedents that support Doherty's proposition that the Open Courts provision of the Maine Constitution limits "the Maine Legislature's authority to determine the substantive dimensions of a cause of action," Page v. Amtrak, Inc., 168 F. Supp. 3d 337, 346 & n.19 (D. Me. 2016), aff'd, 664 F. App'x 12 (1st Cir. 2016), as it has done here.

The Maine Law Court has said that it interprets state statutes narrowly or strictly when they are "in derogation of" the common law. Batchelder v. Realty Res. Hosp., LLC, 914 A.2d 1116, 1124 (Me. 2007); Beaulieu v. The Aube Corp., 796 A.2d 683, 689 (Me. 2002); Ziegler v. Am. Maize-Products Co., 658 A.2d 219, 222 (Me. 1995). It has not said that such statutes are forbidden altogether. The

---

[7] The Minnesota Supreme Court has held that "[a]t common law, no cause of action existed for either wrongful birth or wrongful death," citing Baker v. Bolton, 170 Eng. Rep. 1033 (N.P. 1808) and Prosser and Keeton on the Law of Torts, §§ 55, 125A (W. Keeton et al. 5th ed. (1984)). Hickman v. Group Health Plan, Inc., 396 N.W. 2d 10, 13 (Minn. 1986). Maine's Law Court has made no similar pronouncement. In addressing wrongful birth recovery in Macomber v. Dillman, 505 A.2d 810 (Me. 1986), before the statute was enacted, the Law Court held that "the plaintiffs' action does not represent a new cause of action in the state of Maine" because "[s]ince the early days of the common law a cause of action in tort has been recognized to exist when the negligence of one person is the proximate cause of damage to another person." Id. at 812, quoting MacDonald v. MacDonald, 412 A.2d 71, 75 (Me. 1980). The Court concluded that the plaintiffs' wrongful birth claim in that case alleged "the necessary elements of a cause of action in negligence" before going on to "hold for reasons of public policy" that parents could not recover damages for the birth and rearing of a healthy normal child. Macomber, 505 A.2d at 813. I therefore assume that in Maine there was a right at common law to recover for a wrongful birth until Macomber limited that right in 1986.

Law Court has already provided its interpretation of the Wrongful Birth Statute in this case, so there is no more work to do for this principle of statutory construction. I conclude that as a result of the Law Court's interpretation of the statute, the wrong to Doherty is not "recognized by law as remediable in a court," Godbout v. WLB Holding, Inc., 997 A.2d 92, 94 (Me. 2010), the Open Courts provision does not apply,[8] and there is no improper displacement of the common law.[9]

### 3. *Separation of Powers*

Doherty also makes a separation-of-powers argument. The federal cases she cites on separation of powers, however, do not apply here because Doherty is challenging state, not congressional, legislation.[10] Doherty cites three Maine cases dealing with Maine's constitutional provision regarding separation of powers. Two of them involved commutation of sentences. The Maine Constitution, Article V, Part 1, Section 11, explicitly grants the Governor the

---

[8] In LeGrand v. York County Judge of Probate, 2017 ME 167 ¶ 34 (2017), the Law Court recognized "a right of meaningful access to the courts" separate from the Open Courts provision. But that was in the context of considering delays in proceedings, and does not assist Doherty's claim here.

[9] Doherty cites a number of cases from other jurisdictions in support of her argument about legislation displacing the common law. Those cases interpret their own state Open Courts constitutional provisions and, for the most part, indicate careful scrutiny but not outright rejection of such legislation. See, e.g., Miller v. Johnson, 289 P.3d 1098, 1113-1118 (Kan. 2012) (upholding medical malpractice damages cap); Craftsman Builder's Supply, Inc. v. Butler Mfg. Co., 974 P.2d 1194, 1198 (Utah 1999) (upholding builders statute of repose); Agency for Health Care Admin. v. Associated Indus., 678 So.2d 1239, 1253 (Fla. 1996) (upholding abrogation of affirmative defenses). But see Lankford v. Sullivan, Long & Hagerty, 416 So.2d 996, 1000 (Ala. 1982) (rejecting statutory damage limitation period for products liability).

[10] Doherty stresses that, as first articulated in State v. Hunter, 447 A.2d 797, 799 (Me. 1982), "the separation of governmental powers mandated by the Maine Constitution is much more rigorous than the same principle as applied to the federal government." In isolation this might be read to imply that federal cases are always apposite to discussions of Maine separation of powers in that they establish an absolute interpretive minimum. But only a few sentences later, Hunter also states that "[u]nder the Maine Constitution . . . our inquiry is *narrower* [than federal separation-of-powers analysis]." Hunter, 447 A.2d at 800 (emphasis added). I therefore focus my attention on Maine cases. See also G. Alan Tarr, Interpreting the Separation of Powers in State Constitutions, 59 N.Y.U. Ann. Surv. Am. L. 329 (2003).

power to commute sentences. The Law Court found a separation-of-powers violation, therefore, in granting such authority to the courts, <u>State v. Hunter</u>, 447 A.2d 797, 798 (Me. 1982), and in a legislative enactment that would result in a commutation of existing sentences <u>Bossie v. State of Maine</u>, 488 A.2d 477, 480 (Me. 1985). The third Maine case found a separation-of-powers violation in the effort by the State Employees Appeals Board to review and rule on an employment termination decision by the Chief Judge of the District Court, because it would unconstitutionally result in "a review by the executive branch of the government of the action of the judicial branch" contrary to Article III, Section 2, prohibiting persons in any of the three branches from "exercis[ing] any of the powers properly belonging to either of the others." <u>Dist. Court for Dist. IX v. Williams</u>, 268 A.2d 812, 812-13 (Me. 1970). None of these cases helps Doherty; the Legislature's action in determining the scope of any cause of action for wrongful birth is well within the legislative branch's power, and does not violate the Maine Constitution's separation-of-powers provision.

### 4. *Substantive Due Process under the United States Constitution*

The defendants United States and Merck (not the Maine Attorney General) argue that there are no constitutional issues of due process and equal protection because there is no state action. I cannot fathom that argument. Doherty is attacking the application to her of a state statute. If that is not state action, I do not know what is.[11]

---

[11] Doherty is not attacking the doctor's or Merck's actions under 42 U.S.C. § 1983, for which she would need to show that the defendants were state actors. <u>See, e.g.</u>, <u>Flickinger v. Wanczyk</u>, 843 F. Supp. 32, 35, 37 (E.D. Pa. 1994) (finding no state action for § 1983 purposes and declining to rule on state law claims). Instead, she is suing them under state tort law and is attacking the Wrongful Birth Statute's treatment of her cause of action. The defendants cite <u>Northup v. Poling</u>,

Doherty says that federal substantive due process under the Fourteenth Amendment recognizes a "zone of privacy" with respect to a woman's contraception decisions, a fundamental constitutional right that Maine's Wrongful Birth Statute violates. Pl.'s Consol. Opp'n at 24. In that respect, she cites many of the Supreme Court's famous decisions involving contraceptives, birth control, and abortion, including Griswold v. Connecticut, 381 U.S. 479 (1965); Eisenstadt v. Baird, 405 U.S. 438 (1972); Roe v. Wade, 410 U.S. 113 (1973); Carey v. Population Services International, 431 U.S. 678 (1977); and Planned Parenthood v. Casey, 505 U.S. 833 (1992). Doherty argues that "substantive due process is about an entire 'zone of privacy,' which protects childrearing and other intimate, personal matters of the home." Pl.'s Consol. Opp'n at 24.

But the Maine Wrongful Birth Statute did not intrude on Doherty's and her doctor's decision regarding what contraceptive to use, and she does not allege that it did. The statute contains no prohibition on private choice in that respect

---

761 A.2d 872 (Me. 2000). Northup involved a nonjudicial foreclosure pursuant to a private agreement between the parties about how to proceed, not a case like this where a statute limits Doherty's remedy over her objection. There are two cases that support the defendants' arguments, but I believe they are simply wrong. Hickman v. Group Health Plan, Inc., 396 N.W. 2d 10, 13 (Minn. 1986), found no state action in Minnesota legislation that barred lawsuits for wrongful birth and wrongful life because "[t]he relationship here is strictly between doctor and patient." Campbell v. United States, 962 F.2d 1579, 1583 (11th Cir. 1992), noted that Georgia allowed recovery for medical malpractice committed by private parties, but not for wrongful birth. The court stated: "Even if it could somehow be determined that the Georgia Supreme Court chose to disallow a cause of action for wrongful birth because it would promote abortion, this failure of Georgia to remedy the wrong committed by a private party does not make that party's act an unconstitutional state act." Campbell, 962 F.2d at 1584. The allegedly unconstitutional action, however, is the state's discriminating among who can receive relief. Under the reasoning of these cases and the defendants' arguments, a state could explicitly say that men, but not women, can bring lawsuits for contraception-related actions by doctors and drug companies, and there would be no way to attack the constitutionality of such legislation. That is not and cannot be the law; it is inconsistent with the very principle of judicial review. In Campbell, Circuit Judge R. Lanier Anderson disagreed with the majority's state action analysis. 962 F.2d at 1584-85.

and no criminal penalties. It does structure what recovery is available once the birth of a healthy child occurs despite a parent's efforts to avoid conception and, as the Law Court has determined, affords Doherty no recovery for her failed implant. But the United States Supreme Court has made clear that its decisions on reproductive practices primarily concerned state actions where the State "attempts to impose its will by force of law," Maher v. Roe, 432 U.S. 464, 476 (1977)—state actions that outright prohibit contraception or abortion (as by criminalizing it)—not state actions that refuse to fund certain procedures or fail to eliminate obstacles to those procedures. See Harris v. McRae, 448 U.S. 297 (1980).

Instead, the Supreme Court says that states can make value judgments, for example, "favoring childbirth over abortion, and . . . implement that judgment by the allocation of public funds." Maher, 432 U.S. at 474. The Supreme Court, faced with a state's failure to provide funding, declined to characterize this as the placement of an obstacle in the path to abortion. Id. It stated: "although government may not place obstacles in the path of a woman's exercise of her freedom of choice, it need not remove those not of its own creation." Harris, 448 U.S. at 316. Here, Doherty's choice of birth control method was left between her and her doctor, unimpeded by government-placed obstacles. And even if she had alleged that the Wrongful Birth Statute influenced that decision via its arguably value-laden allocation of negligence liability, Harris and Maher foreclose the argument that such an allocation is constitutionally invalid as a matter of substantive due process. Under those precedents I

conclude that the Maine legislation does not improperly intrude upon Doherty's fundamental right concerning her contraceptive decisions.

**5.    *Equal Protection under Both Constitutions***

Despite her initial claim for wide-ranging damages, Doherty now does not challenge the constitutionality of all limitations on damage recovery for the rearing of a healthy child.  Instead, she states:

> A constitutional reading of the [Wrongful Birth Statute] would have been to allow but limit Ms. Doherty's right to recover damages for the negligence of her provider, which resulted in wrongful conception.  Such damages might include emotional distress and economic losses related to the pregnancy, medical bills and pain and suffering related to pregnancy, reimbursement for the costs of the failed Implanon procedure and device itself, and other forms of harm that do not directly involve the rearing of a healthy child.

Pl.'s Consol. Opp'n at 8-9.

Maine's Law Court dealt earlier with the Wrongful Birth Statute.  Musk v. Nelson, 647 A.2d 1198 (Me. 1994).  Musk challenged the limitations period for a failed sterilization (a tubal ligation) that resulted in pregnancy.  In assessing an equal protection challenge, the Law Court stated that "[t]he success of an equal protection challenge hinges on the standard of review.  Although Musk invokes her status as a pregnant woman, the statute is gender-neutral on its face.  Therefore, to satisfy the Equal Protection Clause the statute need only have a rational relationship to a legitimate goal."  Id. at 1202.  Musk's holding concerning the standard of review is binding on me for purposes of the Maine Constitution's constitutional analysis, albeit not for the federal constitutional analysis.

Under the federal equal protection clause, the standard of review depends on whether the legislation uses a suspect classification and on whether fundamental constitutional rights are at stake. F.C.C. v. Beach Commc'ns, Inc., 508 U.S. 307, 313 (1993). For the fundamental constitutional rights part of the analysis, Doherty makes the same arguments I have dealt with in connection with her substantive due process argument.[12] As I have stated, Maine's legislation does not infringe Doherty's fundamental rights.

On the suspect classification part of the analysis, the United States Supreme Court has made clear that only intentional discrimination is forbidden. Washington v. Davis, 426 U.S. 229, 239-40 (1976). In Washington, racial discrimination was at stake, but the principle is equally applicable to gender discrimination. Pers. Adm'r of Mass. v. Feeney, 442 U.S. 256, 274 (1979) ("principles apply with equal force to a case involving alleged gender discrimination"). Doherty argues that the Wrongful Birth Statute is "gender specific, not gender neutral," that it is "not gender neutral because it does not impact men in the way it impacts women," and that it has an "intentionally disparate impact on women." Pl.'s Consol. Opp'n at 29-30.

I turn therefore to assess exactly what the statute does as it pertains to Doherty's claims. It starts by announcing its intent: "It is the intent of the Legislature that the birth of a normal, healthy child does not constitute a legally recognizable injury and that it is contrary to public policy to award damages for the birth or rearing of a healthy child." 24 M.R.S.A. § 2931(1). Next, it eliminates

---

[12] Doherty argues that the fundamental rights "impacted" are "the right to a jury trial, due process, and reproductive freedom." Pl.'s Consol. Opp'n at 28. I have rejected each of these arguments earlier in this opinion.

all damage recovery for the "birth and rearing of a healthy child." 24 M.R.S.A. § 2931(2). On that issue, it draws no distinction between parents of any gender. The statute elsewhere refers to pregnancy, a mother's loss of earnings during pregnancy, and pain and suffering connected with the pregnancy, and allows certain damages for those. I interpret its reference to "birth," therefore, as referring not to the delivery of the child that ends pregnancy, but to the beginning of the healthy child's existence physically separate from the womb. Undoubtedly many mothers and fathers take different roles in the raising of a child, but the statute does not distinguish between them. I therefore agree with the Maine Law Court's declaration in <u>Musk</u>, 647 A.2d at 1202—in this respect the statute is gender-neutral on its face.[13]

Next, the Wrongful Birth Statute provides that "[a] person may maintain a claim for relief based on a failed sterilization procedure resulting in the birth of a healthy child and receive an award of damages for the hospital and medical expenses incurred for the sterilization procedures and pregnancy." 24 M.R.S.A. § 2931(2). This too is gender-neutral. It applies to sterilization procedures of anyone, regardless of gender, and to the hospital and medical expenses

---

[13] Despite her statement that I quoted earlier cabining her constitutional claim, Doherty seems to argue more broadly about the public policy that the Wrongful Birth Statute adopts. She says that "[b]y declaring that the birth of a healthy child is never considered harm in any way, under any set of facts, including negligence by a provider, the State of Maine effectively forces child-rearing on women who become unintentionally pregnant, despite having contracted with a physician to achieve infertility," Pl.'s Consol. Opp'n at 29, that "it is a scientific impossibility for men to be equally impacted by this 'public policy,' because men cannot get pregnant and give birth," <u>id.</u>, and that it shows "an intentionally disparate impact on women, but little to no impact on men." <u>Id.</u> Because the statute distinguishes pregnancy from birth and rearing of a child, I agree with the Law Court's statement that its treatment of birth and child-rearing is gender-neutral.

(including those for pregnancy) that may be incurred and recovered by either the pregnant person or, where one is present, a partner, or both.

Finally, the Wrongful Birth Statute provides that in the case of a failed sterilization procedure, damages can also be recovered for "the pain and suffering connected with the pregnancy and the loss of earnings by the mother during pregnancy." Id. This part is explicitly gender-specific, but it favors pregnant women by framing the pain, suffering, and lost earnings arising out of pregnancy as harmful only to mothers.

I conclude, then, that the Wrongful Birth Statute does not use a suspect classification that disfavors women.

According to the portion of Doherty's legal memorandum that I quoted at the beginning of this section, she would be content if she had been treated the way a person with a failed sterilization procedure is treated under the statute— i.e., able to recover damages for hospital and medical expenses incurred for her implant procedure and her pregnancy, her pain and suffering connected with her pregnancy, and her loss of earnings during pregnancy. Her complaint is that her failed contraception procedure does not qualify for this relief, given the Law Court's statutory interpretation. But the legislative decision to distinguish contraceptive procedures from sterilization is not gender-specific.

I conclude that regardless of the Wrongful Birth Statute's merits as a matter of public policy, it does not intentionally discriminate on the basis of gender. Doherty argues, without much specificity as to the nature of the

disparate impact, that the statute has an "intentionally disparate impact on women," but she has not demonstrated such an intent.[14]

If neither a suspect classification is used nor a fundamental right infringed, then the so-called rational basis standard of review applies in determining constitutionality:

> Social and economic legislation . . . "carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality." "[W]e will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational."

Kadrmas v. Dickinson Pub. Sch., 487 U.S. 450, 462-63 (1988) (citations omitted). This is "the most relaxed and tolerant form of judicial scrutiny under the Equal Protection Clause." City of Dallas v. Stanglin, 490 U.S. 19, 26 (1989).[15]

The most obvious rationale for the legislative action here is that the Legislature was tracking a Maine Law Court decision, Macomber v. Dillman, 505 A.2d 810 (Me. 1986), decided in 1986 while the Legislature was debating enactment of the Maine Health Security Act, of which the Wrongful Birth Statute is part. In Macomber, dealing with Maine common law, the Law Court stated:

> We hold *for reasons of public policy that a parent cannot be said to have been damaged or injured by the birth and rearing of a healthy, normal child.* Accordingly, we limit the recovery of damages, where applicable, to the hospital and medical expenses incurred for the sterilization procedures and pregnancy, the pain and suffering connected with the pregnancy and the loss of earnings by the mother during that

---

[14] I recognize that under Washington v. Davis, disparate impact is not irrelevant and can be used as evidence of intent to discriminate. 426 U.S. 229, 241-42 (1976). But "[s]tanding alone, [disparate impact] does not trigger the rule that racial classifications are to be subjected to the strictest scrutiny and are justifiable only by the weightiest of considerations." Id. at 242.

[15] The Law Court has said that the Maine Constitution's equal protection restrictions under article I, section 6-A "are no more stringent than those created by the federal Constitution." Beaulieu v. City of Lewiston, 440 A.2d 334, 338 n.4 (Me. 1982).

> time.  *Our ruling today is limited to the facts of this case,*
> *involving a failed sterilization procedure resulting in the birth*
> *of a healthy, normal child.*

Id. at 813 (emphases added).  The legislative debate referred specifically to the

Macomber v. Dillman decision.[16]  It is hardly surprising that soon thereafter this

statement turned into a legislative enactment, prohibiting recovery for birth and

rearing of a healthy normal child, but allowing a limited form of damage recovery

for a failed sterilization procedure, not other forms of contraception.  24 M.R.S.A.

§ 2931(2).  The Legislature was certainly acting rationally in following a Maine

Law Court decision.  Doherty's attack, therefore, is necessarily an attack on the

reasoning of Macomber itself.

Doherty argues that it is "never rational for the State of Maine to deprive

a citizen of due process and foreclose all remedy for a young aggrieved mother

like Kayla Doherty, simply to protect negligent medical providers, liability

insurers, and drug companies."  Pl.'s Consol. Opp'n at 34-35.  She also says that

the Wrongful Birth Statute is, or was, not necessary because the goal of health

cost and insurance premium reduction was achieved by the rest of the Maine

Health Security Act, of which the Wrongful Birth Statute was only a part.  Pl.'s

Consol. Opp'n at 36. But the constitutionally legitimate goals of the Wrongful

---

[16] According to the Legislative Record for the Maine House:

> The second thing [the legislation] does is that it will clarify our statutes with
> regards to wrongful birth.  This is when a woman gives birth to a child after having
> gone through a sterilization procedure.  Currently, there is some doubt as to
> whether or not she can be paid back for the expenses of raising that child.  What
> the committee has done is basically codified a recent court decision, the Dillman
> case, which says that you can claim damages for any medical expenses that you
> incur while you are pregnant, the medical expenses that you had going through
> the sterilization that didn't work, but if a healthy child is born, that you cannot
> claim damages for the raising of that child.  We thought that was a very positive
> step and that that decision be codified.

2 Legis. Rec. 1466 (2d Reg. Sess. 1986).

Birth Statute include the public policy determination announced in <u>Macomber v. Dillman</u> that a parent is not damaged by the birth and rearing of a healthy normal child, as well as controlling the costs of health care and malpractice insurance premiums  and avoiding speculative damages such as future child rearing costs.[17]  I must assess its constitutionality in terms of *all* legitimate objectives[18], not just cost reduction.  Even as to cost reduction, I consider the context in which the Legislature enacted the statute, and in that context there is no question but that it would contribute to the reduction of health care providers' liability.

Doherty challenges four classifications implicit in the statute that, she contends, cannot pass even rational basis review:

- Women who seek contraception via tubal ligation (or "sterilization" according to Defendants) versus women who seek contraception via birth control pills;
- Women who seek contraception via IUD and women who seek contraception via injection like Depo Provera;
- Women who seek contraception via implants like Norplant versus men seeking contraception via vasectomy;
- Consumers of this State who seek a legal remedy for a defective product like Implanon versus consumers of this State who seek a legal remedy for myriad other defective products and drugs.

Pl.'s Consol. Opp'n at 35.  But the Legislature could rationally believe that far greater medical health care costs would result from failed contraception than from failed sterilization.  And the treatment of defective contraceptive products

---

[17] The Wrongful Birth Statute was enacted as part of Maine Health Security Act revisions in the context of what was perceived then as a medical malpractice liability crisis that required reducing liability risks for health care providers.  <u>See</u> <u>Choroszy v. Tso</u>, 647 A.2d 803, 806-07 (Me. 1994).

[18] "Because we never require a legislature to articulate its reasons for enacting a statute, it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature."  <u>F.C.C. v. Beach Comm'ns, Inc.</u>, 508 U.S. 307, 315 (1993) (quoting <u>United States R.R. Ret. Bd. v. Fritz</u>, 449 U.S. 166, 179 (1980)).

in the case of the birth of a healthy child, as distinguished from other products and drugs, is supported by the Maine Law Court's public policy pronouncement in <u>Macomber</u> "that a parent cannot be said to have been damaged or injured by the birth and rearing of a healthy, normal child." 505 A.2d at 813.

Doherty also argues that the statute fails rational basis review because "the state's objectives are themselves invalid," citing <u>City of Cleburne v. Cleburne Living Center</u>'s statement, 473 U.S. 432, 446-47 (1985), that "some objectives—such as a 'bare . . . desire to harm a politically unpopular group—are not legitimate state interests.'" Pl.'s Consol. Opp'n at 35. But she does not establish that the state's objective here was to harm the category of people who use contraceptives rather than sterilization, or that such a category is a "politically unpopular group." She admits that "[l]imiting medical malpractice liability may be a legitimate goal of the Legislature," <u>id</u>.; it remains so even when it comes "at the expense" of potential plaintiffs (a far broader class than the "young women earning low wages" Doherty highlights). <u>Id</u>.

It is not for a judge to agree or disagree with these legislative objectives. I conclude simply that the Wrongful Birth Statute bears a rational relationship to legitimate state objectives.

### 6. *Procedural Due Process*

Ostensibly Doherty makes a procedural due process argument, Pl.'s Consol. Opp'n at 21-22, but there are no "procedures" at stake, only the Wrongful Birth Statute's outright denial of her right to recover for what happened

to her.[19]   I have already ruled against her state and federal constitutional arguments concerning court access and substantive due process; procedural due process does not afford her alternate relief.

**7.   *The Government's Subject Matter Jurisdiction Argument***

The government argues that this court has no subject matter jurisdiction over it, apparently on the basis that Maine law affords no relief to Doherty.  Third Mot. to Dismiss (ECF No. 70) at 5-6.  But that premise depends upon the constitutionality of the Maine statute, which I must first determine.   My conclusion that the statute is constitutional, coupled with the Maine Law Court's interpretation of the statute, means that Maine law provides no relief to Doherty against either Merck or the government, and Fed. R. Civ. P. 12(b)(6) leads me to dismiss the lawsuit for failure to state a claim upon which relief can be granted. As a result, I see no need to address subject matter jurisdiction separately.[20]

**8.   *Declaratory Judgment***

Since I conclude that there is no relief available to Doherty, her request for declaratory relief must also fail.

**CONCLUSION**

I conclude that Maine's Wrongful Birth Statute, as recently interpreted by Maine's Law Court, does not violate the Maine or United States Constitutions either on its face or as applied to Kayla Doherty.  There may be good reasons to question the wisdom of its distinction between sterilization procedures and other

---

[19] As Doherty says in this section, the statute "den[ies] Plaintiff Kayla Doherty any remedy whatsoever for her claims."  Pl.'s Consol. Opp'n at 22.

[20] The circuits are divided over whether to use Fed. R. Civ. P. 12(b)(1) or 12(b)(6) in such a situation, see <u>Kerns v. United States</u>, 585 F.3d 187, 194-96 (4th Cir. 2009) (summarizing circuit split and collecting cases), and the First Circuit has not spoken.

long-term methods of contraception, but making that assessment is not my role as a judge.[21]   I determine only its constitutionality.   I therefore **GRANT** the defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(6).

**SO ORDERED.**

**DATED THIS 24TH DAY OF AUGUST, 2017**

/s/D. Brock Hornby
**D. BROCK HORNBY**
**UNITED STATES DISTRICT JUDGE**

---

[21] According to <u>Pers. Adm'r of Mass. v. Feeney</u>, 442 U.S. 256, 271-72 (1979) (citations omitted) (emphasis added):

> Most laws classify, and many affect certain groups unevenly, even though the law itself treats them no differently from all other members of the class described by the law.  When the basic classification is rationally based, uneven effects upon particular groups within a class are ordinarily of no constitutional concern.  The calculus of effects, the manner in which a particular law reverberates in a society, is a legislative and not a judicial responsibility.  In assessing an equal protection challenge, a court is called upon only to measure the basic validity of the legislative classification.  When some other independent right is not at stake, and when there is no "reason to infer antipathy," *it is presumed that "even improvident decisions will eventually be rectified by the democratic process . . . ."*

In that connection, I agree with the concurring Justices in the Law Court's decision in this case that "it is clear . . . that medicine has outstripped the statutory definitions and that further attention to the language of 24 M.R.S. § 2931 (2016) is needed."  <u>Doherty v. Merck & Co., Inc.</u>, 154 A.3d 1202, 1210 (Me. 2017).